In the Matter of Termination of Parent–Child Relationship: S.J.J., child, and J.J., child, Starlan Newman, natural mother, and John Doe, natural father, Appellants–Respondents,

v.

MADISON COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee–Petitioner.

No. 48A04–9310–CV–397.

Court of Appeals of Indiana, Fourth District.

Feb. 21, 1994.

Transfer Denied June 17, 1994.

---

Steven C. Smith, Patrick R. Ragains, Anderson, for appellants-respondents.

Thomas L. Hulse, Anderson, for appellee-petitioner.

RILEY, Judge.

Starlan Newman appeals the involuntary termination of her parental rights with respect to her children, S.J.J., age 13, and J.J., age 10. She argues that the Madison County Department of Public Welfare (DPW) failed to prove by clear and convincing evidence that there is no reasonable probability that the conditions which caused the removal of her children will be remedied.

We affirm.

### FACTS

Newman is the mother of S.J.J., born on March 21, 1980, and J.J., born on March 12, 1984. She is also the mother of four other children, not the subjects of this appeal, who did not live with her at the time of the termination hearing. Newman was pregnant at the time of the hearing.

In January, 1990, S.J.J. and J.J. were determined to be children in need of services (CHINS) and placed in their mother's custody. The disposition decree ordered Newman to obtain counseling, to provide adequate and stable housing for her children, and to see that the children attend school daily unless they were ill.

On March 8, 1990, the court modified its January order because Newman had not obtained stable housing, had made no attempt to obtain counseling, and allowed one of the children to miss several days of school. The children were removed from Newman's home and placed in a foster care situation where they have remained continuously since that time.

On September 1, 1992, the DPW filed a petition to terminate Newman's parental rights.

At the May 19, 1993, termination hearing, Shelly Ross, a DPW Family Service caseworker, testified that she discussed the court order with Newman in December, 1991, when Ross took over the case from Shannon Snyder, another caseworker. Ross advised Newman during their initial meeting, and also during monthly home visits, that she needed to obtain counseling, to find stable housing for herself and her children, to continue her visits with the children and be consistent with those visits, and to avoid exposing the children during their visits to Newman's then-roommate, Fred Geist, who was known to have taken pornographic pictures of his minor daughter. During her testimony, Newman agreed that her caseworkers had urged her to comply with the court's order.

Since the children were placed in foster care, Newman has lived in a number of residences. For a while she lived with her mother and grandmother in Anderson; however, Ross testified that, due to the grandmother's serious illness and the excessive amount of clutter in the house, the residence could not meet the children's needs. Newman also lived in an apartment with Geist who was involved in another CHINS case. Newman testified that she now lives in a three bedroom house which she shares with Dennis Dellinger and that she has an income of $200–400 a month working part-time cleaning houses. Ross testified that when she attempted to investigate Newman's current housing and income in December, 1992, Newman refused to cooperate. Ross contacted Newman several times, but Newman cancelled an appointment, rescheduled another appointment, and did not show up for a

meeting another time. Newman testified that she did not keep her caseworkers advised as to where she was living at all times.

Immediately following the March, 1990, order, Newman was allowed visitation with the children in her apartment. However, because she allowed the older child to smoke cigarettes in her home and because she would not exclude Geist from the visits, visitation was changed to weekly supervised visits at the Exchange Club Center. Newman was not consistent with visitation, frequently appearing late or missing entire visits. Finally, in October, 1992, the children requested that the visits be stopped.

On December 11, 1991, Newman was evaluated by Dr. Sue Spencer, a therapist at the Center for Mental Health. In June, 1992, she began therapy with Steve McClung, a therapist at the Center, and saw him five times between June 17 and June 24. McClung testified that Newman had a character disorder, which was characterized by a lack of stability, a lack of commitment, and a lack of ability to set rules or goals for herself or her children. McClung advised Newman that she needed intensive therapy to work on these issues. However, Newman was unable to be consistent with her attendance and did not see McClung again after June 24, 1992. Some time prior to January, 1993, Newman made an appointment to see McClung after she became aware of the pending termination hearing; however, she failed to appear for that appointment. When she called McClung again, he refused to see Newman after January, 1992. McClung also testified that if Newman committed herself to working on her disorder, treatment would probably last two to three years.

At the termination hearing, S.J.J. testified that she preferred to remain in her foster home because it was more stable than living with her mother.

On July 14, 1993, the trial court entered its decree terminating Newman's parental rights. It is from this judgment that she appeals.

## DISCUSSION

■■■ Before a parent-child relationship may be terminated, IND.CODE 31–6–5–4 (1992 Supp.) requires the DPW to prove, by clear and convincing evidence that:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that (A) the conditions that resulted in the child's removal will not be remedied; or (B) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(3) termination is in the best interest of the child; and

(4) the county department has a satisfactory plan for the care and treatment of the child.

I.C. 31–6–5–4(c). In considering whether the evidence is sufficient to support the judgment terminating parental rights, this court neither reweighs the evidence nor judges the credibility of the witnesses. *M.B. v. Delaware County DPW* (1991), Ind.App., 570 N.E.2d 78, 82 (citations omitted). Only the evidence most favorable to the judgment will be considered. *Id.* When a trial court, as in the present case, makes detailed findings of fact and conclusions of law, we employ a two-tier standard of review and reverse only upon a showing of clear error, that is, error which leaves us with a definite and firm conviction that a mistake has been made. *Waltz v. Daviess County DPW* (1991), Ind. App., 579 N.E.2d 138, 141–42, *trans. denied.*

■■ Newman's argument is limited to whether the evidence indicates that there is a reasonable probability that the conditions which caused the children's removal will be remedied.[1]

---

1. Newman also contends that the DPW did not prove that there is a reasonable probability that the continuation of the relationship poses a threat to the well-being of the children. However, because we find that DPW has satisfied the alternative condition of I.C. 31–6–5–4(c)(2)(B), we decline to review this issue.

Newman also may be arguing that the trial court erred when it concluded that the DPW's plan for the children was satisfactory. "The plan put forth by the [DPW] for eventual adoption is nothing more than a statement to that effect, and there is no guarantee that that will take place." Appellant's Brief at 12. However, the future

To determine whether a reasonable probability exists that the conditions justifying the child's removal from the home will not be remedied, the trial court should determine the parent's ability to meet the needs of the child as of the time of the termination hearing, taking into account any evidence of changed conditions. Due to the permanency of termination, the trial court must also consider the parent's habitual patterns of conduct as a means of determining the probability of future detrimental behavior.

*R.M. v. Tippecanoe County DPW* (1991), Ind.App., 582 N.E.2d 417, 419. Further, "[f]ailure to cooperate with those providing services coupled with failure to improve the unacceptable home conditions has been held to support a finding that there is a reasonable probability that the conditions that led to the children's removal will not be remedied." *M.B. v. Delaware County DPW* (1991), Ind.App., 570 N.E.2d 78, 82.

■ Newman contends that the trial court erroneously relied on evidence about conditions existing prior to the filing of the petition for termination, ignoring more recent evidence which would have proved that her situation had significantly improved. In support of this contention, she asserts that there is no evidence that the problem of school attendance will recur; that there is uncontroverted evidence that Newman's home situation has significantly changed; that Ross never investigated Newman's current living arrangement; that there was no evidence that further counseling would not remedy Newman's problems; and that Newman has not demonstrated an unwillingness to cooperate with the system.

Because the children have not lived with Newman since March, 1990, there could be no evidence regarding Newman's ability to get them to school. However, there was evidence of Newman's inability to maintain a consistent visitation schedule with her children, and her refusal to modify her home by asking her roommate not to be present during the children's visits. This together with the evidence that Newman was unable to maintain a consistent schedule with her therapist supports the inference that Newman's problem with her children's school attendance has not been remedied.

Next, she argues that there is uncontroverted evidence that her home situation has changed and that Ross never investigated Newman's current living arrangements. However, Newman's testimony regarding her present living situation and income was uncontroverted only because Newman refused to cooperate with Ross when Ross attempted to investigate these matters in December, 1992. Thus, in asserting that her evidence proves that her home situation had significantly changed, Newman is asking us to reweigh evidence and judge witness credibility which we will not do.

■ Newman argues that there was no evidence that further counseling would be ineffective. We cannot agree. Newman was ordered to seek counseling in January, 1990. She submitted to evaluation in December, 1991, and attended five therapy sessions in June, 1992. When she became aware of the pending termination hearing she scheduled a therapy session in January, 1992, but failed to meet that appointment. Her therapist testified that if Newman committed herself to therapy, her treatment would last two or three years. Although she asserted at the termination hearing that she was now ready to commit herself to therapy, the trial court could reasonably infer from her past conduct that further therapy would not remedy her problems.

■ Finally, Newman asserts that she has not demonstrated an unwillingness to cooperate with the system. This assertion is not supported by the record. Newman has refused to comply with the court's order to attend counseling; she has been uncooperative and inconsistent regarding visitation; she has not kept her caseworkers informed as to her residence; and she refused to coop-

---

plans for the children need not be detailed in the evidence; rather, the statute contemplates that the DPW point out the direction in which its plans are going. *Matter of Miedl* (1981), Ind.

App., 425 N.E.2d 137, 139 ("It would be impossible for the Welfare Department to find and select a proposed adoptive home prior to the judgment that gives them a child to place for adoption.")

erate when Ross attempted to investigate her current living situation.

We agree with the trial court's judgment that the conditions leading to the removal of the children from Newman's home have not been remedied.

Judgment affirmed.

MILLER and GARRARD, JJ., concur.